PUGET MILL CO. v. BROWN et al.

(Circuit Court of Appeals, Ninth Circuit. November 14, 1893.)

No. 107.

1. PUBLIC LANDS—HOMESTEAD—FRAUDULENT ENTRY.
    The purchaser of a fraudulent homestead entry, which is thereafter canceled by the land office for such fraud, is not within Act June 15, 1880, allowing a person to whom the right acquired by an entry for homestead has been attempted to be transferred bona fide to make a cash entry. 54 Fed. 987, affirmed.

2. SAME—BONA FIDE PURCHASE.
    A purchase from persons claiming to represent the person making the homestead entry is not a bona fide purchase from the latter, within the act. 54 Fed. 987, affirmed.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

In Equity. Suit by the Puget Mill Company against Thomas H. Brown and others to determine conflicting claims to lands, and for other relief. Bill dismissed. 54 Fed. 987. Complainant appeals. Affirmed.

E. C. Hughes, (Hughes, Hastings & Stedman, H. G. Struve, and Maurice McMicken, on the brief,) for appellant.

J. A. Stratton, (Stratton, Lewis & Gilman, on the brief,) for appellees.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

McKENNA, Circuit Judge. This action was brought primarily for the purpose of enjoining defendants from cutting timber on the land in controversy. After the filing of the original bill, a

patent was issued to defendants, and the bill was amended to show the fact, and prayed that defendants be adjudged to hold the title for plaintiff. Both parties claim under the United States, and the case was submitted on an agreed statement of facts.

The plaintiff's title is based upon a cash entry made at Olympia land office February 10, 1885, pursuant to the second section of the act of congress entitled "An act relating to the public lands of the United States," approved June 15, 1880, (21 Stat. 238,) which reads as follows:

"That persons who have heretofore under any of the homestead laws entered land properly subject to such entry, or persons to whom the right of those having so entered for homesteads, may have been attempted to be transferred by bona fide instruments in writing, may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre, and the amount heretofore paid the government upon said lands shall be taken as part payment of said price: provided, this shall in no wise interfere with the rights or claims of others who may have subsequently entered such lands under the homestead laws."

This entry was based on an entry made in the name of Susan King in the month of January, 1876, as the widow of a soldier entitled to an additional homestead under sections 2304 and 2306, Rev. St.; the latter enabling any one who had entered under the former less than 160 acres to enter as much more as would not exceed 160 acres. The entry was made in accordance with the custom and practice of the land office, which was well known. In pursuance of such custom and practice, plaintiff agreed with the parties claiming to act for said Susan King to purchase the rights of said Susan King, and to pay therefor, upon the entry of said land, and the execution of a deed to plaintiff, the sum of $500, which was a fair market value of said land, and was paid on the execution of the deed, "and without any knowledge or notice of any fraud, irregularity, or illegality in the aforesaid alleged scrip or in the aforesaid entry."

In the application to enter the land, Susan King was described as the widow of Joshua King, deceased. Subsequently the department of the interior received the following letter:

"In reply to yours of the 2nd inst., would say that I homesteaded northwest of southeast, section 7, township 9 north, range 22 west, Johnson county, Arkansas, containing forty (40) acres, as the deed from the land office at Washington City, as well as the county records, will show. My husband, John Wesley King, did not serve in the U. S. army during the late war.
    [Signed]                                   "Susan King."

On the 16th of January, 1885, the commissioner of the general land office sent the following letter to the register and receiver at Olympia:

"Gentlemen: Soldier's additional homestead entry 2410, final 577, dated February 10th, 1876, is in the name of Susan King, widow of Joshua S. King, deceased, and is held for cancellation as illegal and fraudulent, for the reason that Susan King, who made the original homestead entry upon which said additional homestead entry is based, informed me, in a letter dated 27th ulto., that her deceased husband was not named Joshua S. King, but was named John Wesley King, and that he never served in the U. S. army during the recent Rebellion. You will inform all parties in interest of this letter, and that 60 days from receipt of notice of same will be allowed within

which to show cause why said entry should not be canceled, or to file in your office an application (accompanied by the government price of land and the proofs specified on pages 16 and 17 of circular of March 1st, 1884) to purchase land under the act of June 15th, 1880. Report promptly to me the action taken in the matter."

Plaintiff accepted the alternative allowed by said letter, and filed in the land office at Olympia, in pursuance of said letter of the commissioner, an application to purchase the land under the act of June 15, 1880, accompanied by the government price and proofs required by the letter, and the receiver then and there issued and delivered to plaintiff a patent certificate, bearing date February 10, 1885. The money paid by plaintiff was paid into the treasury, and has since been retained by the United States. The order of the commissioner permitting the entry of the land under the act of June 15, 1880, was in accordance with, and in pursuance of, the prior decisions of the secretary of the interior. .

On April 15, 1887, S. M. Stockslager, then assistant commissioner of the land office, pending application for a patent, by a letter dated on said day to the register and receiver, held the said entry for cancellation, on the ground that it was fraudulent or illegal. This action was taken on the same documents and proofs as the previous action of the department detailed above. On appeal the assistant secretary of the interior, after reviewing all the facts, sustained the decision of Stockslager, canceling the entry.

In addition to the stipulation of the parties of the foregoing facts, the testimony of Susan Nourse, formerly Susan King, the person in whose name the homestead entry was made, was taken. She testified that she did not make, or authorize any one to make, such entry, and that all the papers and affidavits, including the power of attorney or deed to Scott, plaintiff's grantor, were fictitious.

We do not consider it necessary to notice all the points made by plaintiff. It is very firmly established that if the officers of the land department, by mistake of law, or if fraud or imposition have been practiced upon them, have issued a patent to one not entitled to it, the party wronged can resort to a court of equity to correct the mistake, and compel the transfer of the legal title to him as the true owner; but he must show that, but for the error or fraud, he would be entitled to the patent. Lee v. Johnson, 116 U. S. 50, 6 Sup. Ct. 249.

It is very clear the plaintiff is not entitled to a patent. It is manifest that the cash entry was allowed by the land department under the supposition that the plaintiff was a bona fide purchaser under the act from Susan King; in other words, that Susan King had made the entry, though not having the qualifications to do so, and that she had conveyed, or attempted to convey, to plaintiff. This her testimony in this case shows was not true, and that the department was imposed upon. The entry and power of attorney to Scott were both fictitious. There was no person who entered the land, and no right, therefore, of such a person transferred, or attempted to be transferred, which in the most lax interpretation of the statute is necessary, and the defendants therefore were

not any of the persons to whom the act gave the right to purchase the land.

It is claimed, however, by plaintiff that the stipulation of facts between it and respondents shows that it was a bona fide purchaser. It appears from the stipulation that a custom existed in the land department to recognize affidavits and proofs similar to the exhibits in this case as soldiers' additional homestead scrip, upon which holders were permitted to enter public lands subject to like entry, and obtain final receipts, and patent certificates and patents therefor; that thereupon, and in pursuance of said custom and practice, which was well known, the plaintiff made an agreement with the persons holding the said alleged soldiers' additional scrip, and claiming to act for the said Susan King, to purchase the same, and the rights of the said Susan King thereunder, and to pay therefor, upon the entry of said land, and the execution of a deed to plaintiff therefor, the sum of $500; that said sum was at all of said times the fair market value of said land, and was paid by plaintiff to the person claiming to represent the said Susan King, upon the execution and delivery of said deed, and without any knowledge or notice of any fraud, irregularity, or illegality in the aforesaid alleged scrip or in the aforesaid entry. This is not a stipulation that plaintiff bought from Susan King bona fide, but from persons claiming to represent her,—propositions entirely different.

Decree and judgment of the circuit court are affirmed.